ALEXANDER RUBINSTEIN, respondent,

*v.*

WILLIAM KASPRZAK et al., appellants.

[Decided April 17th, 1924.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"Complainant claims to be the owner of forty shares of the Stanley Silk Dyeing Co. by purchase from former owners thereof, which stock he presented to the proper officers of the company for transfer to his name, and transfer was refused. He filed his bill against the company and its officers (who are the only other stockholders), praying that the secretary be directed to transfer said shares to his name on the company's books, and that pending this suit the stockholders and directors be restrained from holding meetings. The defense is that the shares in question were purchased by the company and retired, and that the certificates of stock are held by complainant as custodian for the company.

"This is a close corporation, all stock issued being held by Stanley Kasprzak, who is treasurer; William Kasprzak, who is secretary; Veronica Kasprzak and complainant, who is president. Stanley and William Kasprzak and complainant constitute the present board of directors. If the shares in question belong to complainant and are added to other shares he owns, he has a majority of the capital stock, but if the shares were purchased by the company and should be retired, the Kasprzak family has the stock control, so that the Kasprzaks are the persons really interested in resisting complainant's claim.

"The admitted facts are that prior to August, 1918, the forty shares in question were owned by Albert Walzak, John Lingelbach, Stanley Olterzcwski and John Harsche; that such shares were purchased from the owners and paid for by the company's checks and notes dated August 5th, 1918, to the order of the owners, for a total of $7,200; that the certificates were assigned by the owners thereof and delivered to complainant, who held them in his possession until August, 1922, when he presented them to the company's officers with the request that they be transferred on the company's books to his name as owner, and a new certificate delivered to him, which request was refused on the ground that the shares belonged to the company. As to practically everything else of importance in the case alleged by the one side, there is a

flat denial by the other, and it is difficult to determine where the truth lies, but relying largely on the minutes of the company and on its books of account, all being records kept at a time when the relations between the parties were harmonious and when it does not seem probable that complainant was laying a foundation for a claim which he waited four years to assert, I have reached the conclusion that the complainant's story of the transaction is the true one and that he is entitled to the relief he seeks.

"The company was incorporated October, 1916, Rubinstein, the complainant, Stanley Kasprzak, Harsche, Lingelbach, Walzak and William Kasprzak were on its first board of directors, which was completed by the election of Olterzcwski, December, 1916. Rubinstein was elected president and Stanley Kasprzak treasurer, and by agreement with the company Kasprzak was employed as superintendent and manager of the business, and Rubinstein was employed as its soliciting agent. As early as April, 1917, the other stockholders and directors were complaining of the management of Kasprzak and Rubinstein, and at a meeting of the board, held April 30th, 1917, four dissatisfied stickholders expressed a desire to dispose of their shares and were informed that the company would not buy because it did not have the money. At five directors' meetings prior to June 24th, 1918, the subject of the sale of this stock to the company was discussed and it was reiterated that the company had not the money and would not buy. From the minutes of six other directors' meetings, during the same period, it appears that the company's business was poor; that many repairs to, and replacements of, machinery were required, and that because of lack of funds a frequently discussed dividend could not be paid. At the meeting of June 24th, 1918, William Kasprzak informed the board that he had sold his shares to Rubinstein, and the secretary asked why he had sold his shares without notice to the company. Rubinstein replied that the company had not the money and that because certain shareholders had stated they proposed to buy he, Rubinstein, had bought

the shares from William Kasprzak. For some undisclosed reason this sale of stock did not go through. About this time the four dissatisfied stockholders took their troubles to Attorney Benson, who, after several interviews with Rubinstein, arranged with Rubinstein for a sale of the stock. In the minutes of a directors' meeting, held July 29th, 1918, it is recorded that Rubinstein, upon being asked about these stockholders, stated that he had been called to Benson's office July 20th with Olterzcwski, Walzak and Stanley Kasprzak had made arrangements to purchase the stock. Rubinstein testified that after his first meeting with Benson, he consulted Stanley Kasprzak, who told him that the company could not take the stock, and that he then asked Kasprzak if he, Kasprzak, would buy, and Kasprzak said he would not, and told Rubinstein to purchase it; that Rubinstein then asked Kasprzak if he could borrow the necessary money from the company, and that Kasprzak consented, and thereupon Rubinstein informed Benson that he would buy. This is denied by Kasprzak, but because at the directors' meetings it had been uniformly officially decided that the company was not in funds and could not buy, and because of other circumstances to which I shall refer, I feel that Rubinstein's story is corroborated.

"The sale was consummated August 5th, 1918, at Benson's office. Harsche, one of the stockholders who sold, had previously signed the form of transfer endorsed on his certificate and had given his certificate to Walzak to deliver for him, and was not present at the transfer. Walzak, Lingelbach and Olterzcwski, who were at Benson's office when the sale was closed, testified that they signed the assignments of their certificates in blank and delivered the certificates to Benson in exchange for their checks and notes. Benson had not known Rubinstein prior to this transaction and he was acting in the matter for Walzak, Lingelbach, Olterzcwski and Harsche. He is a disinterested witness and he testified that the body of each assignment, including Rubinstein's name as assignee, is in his (Benson's) handwriting, and that he is

quite sure that the assignments were filled in as they now appear, before the assignors signed. Rubinstein's testimony is to the same effect. Whether Benson filled in the assignments before or after the assignors signed, it is apparent from his testimony that his understanding of the transaction was that Rubinstein was purchasing the stock, and hence he named Rubinstein as the assignee in the assignments, and this in spite of the fact that the checks and notes which were delivered at his office in payment for the stock were made by the company. The certificates of stock were then delivered to Rubinstein, who has had them ever since.

"The checks and notes which paid for the stock were prepared by Veronica Kasprzak, daughter of Stanley Pasprzak, who was then the company's bookkeeper. These disbursements of company's funds were entered in the cash book by Veronica Kasprzak under date of August 5th, 1918, as payments to the respective stockholders who sold, with the amount paid each opposite his name, the total being $7,200, and the four entries were bracketed by her, and outside the bracket she wrote the words 'a loan.' Rubinstein repaid the money to the company in three installments, as follows: October 21st, 1918, $3,500; November 23d, 1918, $2,000, and May 3d, 1919, $1,700, each of which payments is credited to Rubinstein in the company's cash book in the handwriting of Veronica Kasprzak and to each of which she added the words 'return of loan.' Veronica Kasprzak says that when she made the entry of August 5th, 1918, she knew that the transaction was a purchase of the stock in question, but that she did not know Rubinstein to be the purchaser, and that she made all the entries in the cash book, including the words 'a loan' and 'return of loan' under Rubinstein's direction, without understanding the reason for or meaning of such entries. This Rubinstein denies, and he says she was with her father when he and Kasprzak discussed the proposed loan to Rubinstein.

"Miss Kasprzak graduated from a Paterson grammar school in 1914, and after being employed in a mill, went to work as bookkeeper for the company in July, 1918, when she was

about seventeen years old. She is an intelligent young woman, speaking and writing the English language perfectly, and throughout the trial of this case she sat with defendant's counsel and was frequently consulted by, and she advised with, him in connection with the trial. Before and after the purchase of the stock she resided with her father. It seems improbable that the purchase of this stock was not discussed in her presence in the home and in the office, and that she did not understand the whole transaction and did not know that the first entry she made in the cash book indicated that the company was loaning $7,200 to Rubinstein to pay for the stock purchased from the four stockholders, nor does it seem probable that when she made the first entry of repayment by Rubinstein and added the words 'return of loan' October 21st, 1918, after she had kept the company's books nearly four months, she did not know that Rubinstein was returning part of the money loaned him by the company to purchase the stock in question.

"A bookkeeper not regularly employed by the company, but called in from time to time to keep the company's ledger, posted the entries from the cash book. He testified that in posting the first entries to which I have referred, he charged Rubinstein's loan account with the $7,200 paid the stockholders, because Miss Kasprzak told him that the amount should be so charged and that he credited the loan account with the three payments made by Rubinstein, because the cash book entries showed they should be so credited. The ledger was kept in the office of the company and Miss Kasprzak had access to it, and it does not seem probable that she did not know of Rubinstein's loan account and the entries therein.

"The minute record of a directors' meeting of August 26th, 1918, shows Stanley Kasprzak, Rubinstein and Bieszczad as the only persons present, the latter being then secretary and a director, but having since sold his stock to Veronica Kasprzak. At this meeting Rubinstein reported that on August 5th, 1918, he had paid the four stockholders $7,200 for their shares, whereupon Bieszczad asked Rubinstein who paid for

the shares. Kasprzak answered the question by saying that the stock had been paid for 'with the company's money.' Rubinstein then stated 'to the company' that he would like to have the forty shares divided equally between Kasprzak and himself, and Bieszczad asked Kasprzak if he agreed to this, and the minutes show that Kasprzak replied 'that he isn't.' It is contended by Kasprzak that the word last quoted as originally written in the minutes was 'is' and that it has been changed by some person, who, it is inferred, is Rubinstein, to 'isn't.' Rubinstein, who signed the minutes, says that it was originally written 'isn't,' while Bieszczad, who took the minutes in Polish and whose son afterward translated them into English and wrote them in the minute book, says that the word was originally 'is.' The disputed word has a different appearance from the other words in the sentence, but I am not convinced that the handwriting is different, but rather that the difference in appearance is due to a greater quantity of ink having been used in writing the word.

"Kasprzak, by his filed answer and by his testimony, contends that the stock was not purchased by or for the benefit of any individual, but by the company, and was retired, notwithstanding that, up to the time of the purchase, the minutes show that the board of directors had refused several times to purchase for the company, and that the company apparently did not have the money with which to purchase. It therefore seems to me that at the meeting of August 26th, 1918, after Kasprzak had stated that the stock had been paid for 'with the company money,' and Rubinstein, speaking as though he had the right to dispose of the shares, had stated 'to the company' that he would like to have Kasprzak take half of them, Kasprzak could not have said he was willing, and the secretary who took the minutes could not have noted that Kasprzak said 'that he is,' because Kasprzak's natural reply to Rubinstein's proposition would be a statement to the effect that Rubinstein was not the owner of the stock and could not make any disposition of the shares. The books of account show that the money used for the purchase of the stock was loaned to Rubinstein and that the loan was repaid

by him. The certificates for the forty shares have always been in Rubinstein's possession. The fact that Kasprzak never paid, or offered to pay, Rubinstein for twenty shares, and never made demand on Rubinstein for any shares, also negatives his claim that at the meeting in question he agreed to take half of them. If, however, at this meeting, Kasprzak did agree to an equal division of the forty shares between Rubinstein and himself, it must have been his understanding that Rubinstein and not the company had purchased, because if he believed the company to be the owner of the stock, he must have known that he and Rubinstein could not take the stock purchased with company funds and for the company, to the exclusion of the other two stockholders, William Kasprzak and Bieszczad.

"Defendants call attention to a dividend amounting to $2,050, which was paid by the company November 21st, 1918. At that date the stock outside of the forty shares was held as follows: Rubinstein, ten shares; Stanley Kasprzak, seventeen share; Bieszczad, ten shares, and William Kasprzak, five shares. Of this dividend Rubinstein and Stanley Kasprzak received equal amounts, and the defendants argue that if Rubinstein was then the owner of the forty shares in question, he would not have consented to share equally in this dividend with Kasprzak. Rubinstein's explanation is that he and Kasprzak were friends when they formed the company, and that they then agreed to share equally in all amounts drawn from the company, whether for salaries or profits, regardless of their stock holdings. They did share equally in salaries and in other amounts drawn by them from the company under resolutions passed by the board of directors, and while his explanation of an equal sharing of dividends, when, as he claims, he owned fifty shares and Kasprzak owned seventeen, appears on its face improbable. yet if the situation was as Kasprzak claims, namely, that the forty shares had been retired, and he owned seventeen shares and Rubinstein owned ten, he, Kasprzak, was consenting to an equal apportionment of the dividend between Rubinstein and himself, notwithstanding the difference in the number

of shares held by each, so that the manner in which the divi-dend was paid out does not affect my opinion as to the merits of Rubinstein's claim.

"In explanation of his holding the certificates purchased, from August 5th, 1918, to August, 1922, and failing to pre-sent them to the secretary for transfer, Rubinstein says he did not know it was necessary to have the shares transferred, and that his ignorance continued until he learned that Ver-onica Kasprzak had purchased Bieszczad's shares and had presented them for transfer in August, 1922, whereupon he presented his shares. None of the stockholders had had any experience with corporations or with stock ownership and all were more or less ignorant of business methods, so that Ru-binstein's explanation appears to me to be reasonable.

"Section 48 of the Corporation act (*Comp. Stat. p. 1630*) provides:

" 'Nothing but money shall be considered as payment of any part of the capital stock of any corporation organized under this act, except as hereinbefore provided, in the case of the purchase of property, and no loan of money shall be made to a stockholder or officer thereof; and if any such loan be made the officers who made it, or assent thereto, shall be jointly and severally liable, to the extent of such loan and interest, for all the debts of the corporation until the repay-ment of the sum so loaned.'

"The connection in which the prohibition against a loan to a stockholder or officer is placed in this section would indi-cate that it bears some relation to the requirement that only cash shall be considered as payment for stock, but, however that may be, the statute seems to have been enacted for the benefit of creditors to secure them for their debts as against the dissipation of corporate funds through loans to stock-holders and officers, by making the officers, who assent to such a loan, liable for the repayment thereof in case the borrower fails to pay. If such a loan be made and be repaid no cred-itor can complain, and the penalty prescribed by the statute is ended. The defendants insist that a loan, such as the one in question, is prohibited by the statute, and, if it was made, Rubinstein became trustee for the company, not only of the

money borrowed, but of the stock purchased by the loan as well. 'The company' in this case is Stanley Kasprzak, William Kasprzak and Veronica Kasprzak, and they and not the artificial person, the corporation, will benefit by the position they assume. There is no doubt but that Rubinstein returned the money which they say he held in trust, and the individuals mentioned, representing 'the company,' say they also want the benefit of the stock he purchased. That is, that 'the company' having refused to buy the stock and having permitted Rubinstein to purchase and assume the risk of loss, may not change its position and for the advantage of individuals, two of whom actively participated in the transaction, and the other of whom probably knew of it and did not disavow it until four years later, demand the stock for 'the company.' It is my view of the testimony that, in borrowing from the company and purchasing the stock, Rubinstein acted in good faith, and that Stanley Kasprzak and Veronica Kasprzak knew that Rubinstein was borrowing the money for such purpose on his own account. William Kasprzak was in the employ of the company and was at its place of business daily. While he was not at the meeting of August 26th, 1918, at which the sale of the stock was reported, he was a director of the company and knew that Walzak, Lingelbach, Olterzcwski and Harsche had been endeavoring to sell their stock, and that, having been directors, they ceased to hold such office, and he, himself, had been negotiating with Rubinstein for the sale of his own stock. He attended the annual meeting October 28th, 1918, at which he was elected a director and secretary, and as such secretary the minute book came into his possession. It does not seem probable that as an employe, stockholder, director and secretary, and as a brother of Stanley Kasprzak, he was not familiar with the proceedings of the directors and the minute record thereof, and did not know of the loan to Rubinstein, its purpose and its repayment. Under these circumstances, I do not consider it equitable for Stanley Kasprzak, William Kasprzak and Veronica Kasprzak to insist that Rubinstein holds this stock as trustee for the company."

*Messrs. Ward & McGinnis,* for the respondent.

*Mr. William I. Lewis,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, KAYS—13.

*For reversal*—None.